UNITED STATES of America, Appellee,

v.

Douglas WHITE, Appellant.

No. 93–2338.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1993.

Decided Dec. 13, 1993.

Rehearing Denied Feb. 1, 1994.

---

Al J. Arendt, Pierre, SD, argued, for appellant.

Diana J. Ryan, Asst. U.S. Atty., Rapid City, SD, argued, for appellee.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury convicted Douglas White of sexually abusing two of his wife's grandsons, R.H. and L.H., who were, at the time of the trial, aged nine years and seven years respectively. Evelyn White, the appellant's wife, had custody of L.H. for reasons not relevant to this case. The two boys were the Government's principal witnesses during its case in chief. Geraldine Little Boy is the boys' mother and Evelyn White's daughter-in-law. She also testified for the Government. At the trial, R.H. and L.H. identified White as the person

who had sexually abused them. They described the abuse and related how they told their mother and grandmother of the abuse. L.H. testified that he had told his grandmother on the day the abuse occurred that White had sexually abused him. Geraldine Little Boy testified without objection that Evelyn White came to her home one evening to tell her that Douglas White had sexually abused R.H. and L.H. The mother testified, again without objection, that she asked R.H. about the abuse the following morning and that R.H. confirmed the story. R.H. testified without objection that he told his mother about the abuse; he testified on cross-examination that he told his mother of the abuse the day after it occurred.

White's defense was that the boys were making up the story at the request of their mother who wanted to regain custody of L.H. He presented testimony, including his own, that the boys had fabricated the story. Witnesses for the defense, including White's wife Evelyn, recounted statements that the boys had made out of court that their stories of abuse were not true. Evelyn White testified on cross-examination that L.H. had never told her that he had been abused. She also testified that when she asked L.H. about the abuse the day before the trial began he denied that it had happened.

Lyle Brings Him Back and Sheryl Martinez, both of whom had investigated the allegations of child abuse, testified at trial as part of the Government's rebuttal. They had interviewed L.H., R.H., and Evelyn White as part of their investigation. They testified that R.H. described to them how White had abused his brother and him. Brings Him Back also testified that Evelyn White told him that L.H. had told her that White had abused L.H. and R.H. L.H. refused to speak with the investigators. Charles Roofing was a counselor at the elementary school that R.H. attended. He also testified as part of the Government's rebuttal. He testified that he gave counseling to R.H., in the course of which, Roofing said, R.H. told him that White had abused him and described the abuse.

At trial, White objected that the out-of-court statements made by R.H., L.H., and Evelyn White were inadmissible hearsay. The Government asserted that the statements of R.H. were admissible as prior consistent statements under Rule 801(d)(1)(B) of the Federal Rules of Evidence, that the statements of Evelyn White were admitted only to impeach her testimony, and that the statements R.H. made to Martinez and Roofing were admissible under Rule 801(d)(1)(B) and, because they were made for the purposes of medical diagnosis, under Rule 803(4) as well.

## I.

### A.

■ At issue here are three categories of statements. In the first category are the statements made by Evelyn White to Brings Him Back. Brings Him Back testified that Evelyn White had told him that L.H. had told her that he had been abused by Douglas White. The statements that Brings Him Back testified to were inconsistent with Evelyn White's testimony that she had not told Brings Him Back that L.H. had told her that the boys had been abused. When White objected to the statements as hearsay, the trial court overruled the objection and instructed the jury that they were to consider *Brings Him Back's testimony not for the truth of what Evelyn White said to him, but rather to determine whether Evelyn White had in fact made the statements.* With such an instruction, the statements came into evidence as non-hearsay: they were not offered for their truth. Fed.R.Evid. 613(b) & 801(c).

Under Rule 613(b), evidence of a prior inconsistent statement is not admissible unless the witness is afforded an opportunity to explain or deny the statement. During the Government's cross-examination of Evelyn White, the prosecutor specifically asked whether she had told Brings Him Back that L.H. had told her that White had abused him. Evelyn White responded that she had not and invited the prosecutor to ask the people from the Department of Social Services who were present at the interview to confirm her testimony. Thus, the requirements of Rule 613(b) were met.

White argued at trial that Evelyn White's statement to Brings Him Back was objectionable for the additional reason that she was relating what L.H. had said to her. We disagree. Since Evelyn White had testified that she had not told Brings Him Back that L.H. had told her about the abuse, her statement to Brings Him Back was admissible as a prior inconsistent statement offered not to prove the truth of what L.H. said, or even whether he had said it, but rather to impeach Evelyn White's testimony about what she had said to Brings Him Back. Evelyn White's statement to Brings Him Back, therefore, is relevant to Evelyn White's credibility. We find that Brings Him Back's testimony of Evelyn White's extrajudicial statements was properly admitted.

### B.

 The second category of statements consists of those that R.H. made to Brings Him Back and to Roofing. R.H. had testified as part of the Government's case in chief; White had sought to discredit this testimony by showing that it was fabricated. Brings Him Back and Roofing testified that R.H. had told them that White had abused him. The trial court admitted this evidence and cautioned the jury that it was admissible only for determining whether R.H. had said he had been abused, not for whether in fact he had been abused. The court did not cite a specific rule with respect to Brings Him Back's testimony, but did assert that Roofing's testimony was admissible under 801(d)(1)(B). That rule, however, allows prior consistent statements in certain, narrow circumstances to be introduced, not merely to rehabilitate a witness, but as substantive evidence. When a trial court gives an instruction to the jury that the out-of-court statements that are being related are admissible only to buttress the credibility of a witness, the statements are not hearsay. *United States v. Demarrias,* 876 F.2d 674, 677–78 (8th Cir.1989). We find no error in admitting evidence of a prior consistent statement for the narrow purpose of rehabilitating a witness.

### C.

 The third category of statements contains those that Martinez testified that R.H. made when Martinez and Brings Him Back interviewed R.H. The trial court admitted these statements under Rule 803(4) as substantive evidence. That rule provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history ..." are not excluded by the rule against hearsay. The reason for this exception to the general rule is that "a person seeking medical treatment is unlikely to lie to a doctor she wants to treat her since it is in her best interest to tell the truth." *Ring v. Erickson,* 983 F.2d 818, 820 (8th Cir.1992). In *Ring,* the alleged victim of child sexual abuse had been brought by her mother to see a doctor. We held that statements made to the doctor were inadmissible because the requisite indicia of reliability were absent: the child did not herself seek the doctor's help and there was no evidence that she knew she was talking to a doctor.

We have held that the medical-diagnosis exception may apply "to statements about abuse ... made by a child to a trained social worker or psychologist pursuant to diagnosis or treatment for emotional or psychological injuries...." *United States v. Balfany,* 965 F.2d 575, 581 (8th Cir.1992). The Government must, of course, still satisfy the subjective standard of *Ring:* it must show that R.H. understood that he was speaking to a trained professional for the purposes of obtaining diagnosis of, or providing treatment for, emotional or psychological injuries. Whether Martinez was in fact a "trained social worker" may be relevant both to whether R.H. understood that her purpose was to diagnose or treat his injuries and to whether she qualifies for the medical-diagnosis exception under *Balfany.* Although we doubt that Martinez, who lacked significant professional and academic training and experience relevant to diagnosing or treating emotional or psychological injuries, was indeed a trained social worker, we need not decide that question because it is clear that the Government did not produce evidence sufficient to satisfy the criteria we adopted in *Ring.*

There is nothing in the record to suggest that R.H. appreciated that it was in his best interests to tell the truth and was therefore unlikely to lie. How Martinez explained her role and purpose to R.H., how she asked him questions, and how and where she conducted the interview are matters that can provide evidence "that the child understood the physician's [or therapist's] role in order to trigger the motivation to provide truthful information." *United States v. Barrett,* 8 F.3d 1296, 1300 1993 U.S.App. LEXIS 28740 at *11 (8th Cir.1993). Martinez's interview took place in an automobile around which other children, R.H.'s siblings, were playing, so that when Martinez gave R.H. graphic pictures of a man and a boy and asked him to locate on the pictures where he had been touched and with which parts of White's anatomy White had touched him, R.H. had to hide the pictures in order to prevent the children outside from seeing what he was doing. Martinez never explained her role and purpose to R.H., R.H. did not himself seek Martinez's help, and there was no evidence that he thought he was talking to a medical professional. We find this record wholly inadequate to support a claim that R.H. understood that Martinez was conducting the interview in order for her or another to provide diagnosis or treatment for emotional and psychological injuries. Thus, the medical-diagnosis exception of Rule 803(4) cannot properly be applied here.

■ The Government argues before us, and asserted at trial, that the statements that R.H. made to Martinez were also admissible as substantive evidence under Rule 801(d)(1)(B). A party seeking to admit evidence under that rule must satisfy two requirements:

1. The declarant must testify at trial and be subject to cross examination concerning the declaration; and

2. The statement must be consistent with the declarant's testimony at trial, and be offered to rebut a charge of recent fabrication, improper influence or motive.

*United States v. Red Feather,* 865 F.2d 169, 171 (8th Cir.1989). We have held that the second requirement is not met if the party offering the testimony merely anticipates a charge of recent fabrication, or improper influence or motive; a corroborating statement may not be admitted under 801(d)(1)(B) until the declarant's testimony at trial has been challenged. *United States v. Azure,* 801 F.2d 336, 343 (8th Cir.1986).

R.H. testified at trial. He was cross-examined about statements that he made to others about White's having sexually abused him, and could have been recalled by the defense to be examined specifically about the statements that he made to Martinez. White had implied during his cross examination of R.H., and asserted through the testimony of his witnesses, that R.H. was fabricating the story of abuse at his mother's urging. The statements that Martinez testified to were indeed consistent with R.H.'s earlier testimony. Finally, R.H. had been charged with recent fabrication or improper motive or influence before his prior consistent statements were offered as substantive evidence: in his defense, White alleged that Geraldine Little Boy's desire to regain custody of L.H. from Evelyn White had led her to influence R.H. to fabricate his story. The Government offered testimony of R.H.'s prior consistent statements as part of its rebuttal, after R.H. had testified and after his testimony had been impeached.

The difficulty here is that the motive for fabrication, as alleged by White, if it existed at all, existed *before* R.H. told Martinez that White had abused him. We have held, adhering to the rule in the majority of the circuits, that "prior consistent statements must be entirely independent of the alleged motive to fabricate before they can be admitted for substantive purposes." *United States v. Bowman,* 798 F.2d 333, 338 (8th Cir.1986), cert. denied, 479 U.S. 1043, 107 S.Ct. 906, 93 L.Ed.2d 856 (1987). "[M]ere repetition does not imply veracity." *Bowman, supra,* 798 F.2d at 338 (quoting 4 J. Weinstein & M. Berger, Weinstein's · Evidence ¶ 801(d)(1)(B)[01] at 801–117 to 801–118 (1981) [quotation located at p. 801–189 in 1992 edition] ). Thus, to be admitted as substantive evidence under Rule 801(d)(1)(B), a prior consistent statement must have been made before the motive to fabricate came into existence. *Bowman, supra,* 798 F.2d at

338. We cannot say that this is the case here. Had R.H. made up the entire story prior to the filing of the complaint with the Department of Social Services, the statements he made to Martinez would have been part of the fabrication and, therefore, of no probative value to a determination of whether the story was in fact a fabrication. We conclude, therefore, that although R.H.'s statements were admissible when accompanied by a limiting instruction, as they were when Brings Him Back and Roofing testified to them, the statements were not admissible for their truth under either Rule 803(4) or Rule 801(d)(1)(B). The trial court therefore erred in allowing Martinez to testify to R.H.'s extrajudicial statements without a limiting instruction.

■ We need not reverse the trial court if admitting R.H.'s extrajudicial statements was harmless error. Erroneously admitting evidence at trial may be said to be harmless if "[o]ther evidence to the same effect was properly before the jury...." *United States v. Austin*, 823 F.2d 257, 260 (8th Cir.1987), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988); *see also United States v. Smith*, 794 F.2d 1333, 1336 (8th Cir.) (admitting evidence cumulative of evidence already before the jury is harmless), *cert. denied*, 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986). As we have said, R.H.'s statements that were recounted to the court through Martinez's testimony were consistent with and duplicative of R.H.'s own testimony at trial. Indeed, other extrajudicial statements made by R.H. regarding the abuse came in for their truth through the testimony of Geraldine Little Boy and R.H. himself when White failed to object to them. Furthermore, the testimony of Brings Him Back and Roofing supported the credibility of R.H.'s testimony that White had abused him. Thus, the objectionable portion of Martinez's testimony was to the same effect as other testimony properly before the jury. Admitting the testimony was therefore harmless error.

## II.

■ White also challenges his conviction on the grounds that the trial court should have granted his motion for acquittal. He argues that because the physician who examined the boys found no evidence of physical trauma, and because he presented testimony that the boys had fabricated their story, the Government's evidence was not sufficient to support a conviction. In fact, the record reveals that the physician's testimony was somewhat ambiguous, and was not inconsistent with a diagnosis of child abuse. Both sides attempted to impeach the other's witnesses by presenting evidence of fabrication. The trier of fact is in the best position to assess the credibility of witnesses. The evidence contained in the record is clearly sufficient to support the verdict.

## III.

For the reasons given we affirm White's conviction.