**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**P. STEPHEN MILLER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GERALD P. VANPATTEN,          )
            )
    Appellant-Defendant,       )
            )
    vs.           )    No. 02A03-1103-CR-113
            )
STATE OF INDIANA,         )
            )
    Appellee-Plaintiff.        )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D04-0911-FA-69

February 14, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Gerald VanPatten appeals his two convictions for child molesting as class A felonies and one conviction for child molesting as a class C felony.[1] VanPatten raises four issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion or acted unreasonably and arbitrarily in denying Vanpatten's counsel's motion to withdraw and in not allowing VanPatten to discharge his counsel;

II. Whether the court abused its discretion in admitting certain statements; and

III. Whether the evidence is sufficient to support his two convictions for molesting S.D.

We affirm.

The relevant facts follow. In the summer of 2009, S.D. and E.R., who were both six years old, lived next door to each other, were close friends, and played together daily. E.R. spent the night at S.D.'s house approximately five times during the summer, and E.R. and S.D. slept together in the same bed, either in S.D.'s room or in S.D.'s mother's room. On more than one occasion when E.R. spent the night at S.D.'s house, VanPatten, who is S.D.'s biological father, entered the room where the girls were sleeping, pulled down E.R.'s panties, and touched his penis to and placed it inside E.R.'s vagina. When S.D. woke up, VanPatten "would do it to her." Trial Transcript at 212.

In August 2009, after E.R. and S.D. spoke with S.D.'s mother, S.D.'s mother contacted S.D.'s pediatrician. At some point after E.R.'s mother learned of the molestation allegations, she walked next door and confronted VanPatten about what she had learned, and VanPatten stated that "you know kids exaggerate." Id. at 258. S.D. and

---

[1] Ind. Code § 35-42-4-3 (Supp. 2007).

E.R. were later taken by their mothers to the Child Advocacy Center for a forensic interview and then to the Fort Wayne Sexual Assault Treatment Center for a medical examination, where Joyce Moss, a forensic nurse examiner, separately examined S.D. and E.R.

On November 17, 2009, the State filed an information charging VanPatten with Count I, child molesting as a class A felony for performing or submitting to sexual intercourse with S.D.; Count II, child molesting as a class A felony for performing or submitting to deviate sexual conduct with S.D.; Count III, child molesting as a class A felony for performing or submitting to sexual intercourse and/or sexual deviate conduct with E.R.; and Count IV, child molesting as a class C felony for performing or submitting to fondling or touching with S.D. On December 10, 2009, Anthony S. Churchward filed an appearance on behalf of VanPatten, and Mark A. Thoma subsequently joined in representing VanPatten.[2] In a letter file-stamped as received by the court on December 28, 2010, VanPatten asked the court to set a hearing because he wished to fire his attorneys. VanPatten also forwarded to the court copies of complaints which he had filed against his counsel with the Indiana Supreme Court Disciplinary Commission.[3]

On January 10, 2011, VanPatten's defense counsel filed a motion to withdraw appearance which stated that "[t]here has been a breakdown in the attorney-client relationship which precludes further representation." Appellant's Appendix at 78.

---

[2] The parties do not point to the record to show when Thoma joined in representing VanPatten.

[3] The complaints alleged among other things that defense counsel refused to obtain certain expert witnesses, attempted to force VanPatten to sign a plea agreement, refused to investigate certain parts of the case, discussed the case with other clients of counsel, and did not provide an invoice.

Defense counsel also filed a memorandum in support of their motion. After a hearing, the court denied the motion to withdraw.

VanPatten's jury trial commenced on January 24, 2011. At trial, S.D. recanted her previous allegations against VanPatten. Moss, the forensic nurse who examined S.D. and E.R., testified in part regarding the facility at which the examinations were performed and the standard examination procedures. Moss further testified, over objection by VanPatten's counsel,[4] regarding the statements given to her during the examination at the treatment center by S.D. regarding the molestations, including S.D.'s statements that "he put his private on my private, on the inside," that "[h]e put his mouth on my private and he put his finger in my private," and that "white stuff came out of his private." Trial Transcript at 349. The jury found VanPatten guilty of Counts II, III, and IV and not guilty of Count I. The court sentenced VanPatten to forty years for each of his convictions under Counts II and III, to be served consecutive to each other, and four years for his conviction under Count IV, to be served concurrently with the sentences under Counts II and III.

I.

The first issue is whether the court abused its discretion or acted unreasonably and arbitrarily in denying the motion to withdraw of VanPatten's counsel and in not allowing VanPatten to discharge his counsel. Whether to allow counsel to withdraw is within the trial court's discretion, and we will reverse only when denial constitutes a clear abuse of

---

[4] VanPatten's counsel objected on the grounds that the testimony violated the hearsay rule, and the State argued that the testimony was permitted under Ind. Evidence R. 803(4) as an exception to the hearsay rule for statements which were made for the purpose of medical diagnosis or treatment. The court overruled the objection.

discretion and prejudices the defendant's right to a fair trial.[5] Bronaugh v. State, 942 N.E.2d 826, 829 (Ind. Ct. App. 2011) (citing Strong v. State, 633 N.E.2d 296, 300 (Ind. Ct. App. 1994)), trans. denied. The right to counsel of one's choice is an essential element of the right to counsel under the Sixth Amendment to the United States Constitution, but "while the right to counsel is absolute, the right to counsel of one's choice is not." Galloway v. State, 656 N.E.2d 1204, 1205 (Ind. Ct. App. 1995), trans. denied. The trial court may refuse a motion to withdraw if there will be a resultant delay in the administration of justice, and the trial court's decision in that regard is left to its sound discretion. Id.

---

[5] Ind. Code § 35-36-8-2 provides:

(a) Counsel for a defendant charged with a felony or misdemeanor may withdraw from the case for any reason, including failure of the defendant to fulfill an obligation with respect to counsel's fee, at any time up to thirty (30) days before the omnibus date.

(b) However, the court shall allow counsel for the defendant to withdraw from the case at any time within thirty (30) days of, and at any time after, the omnibus date if there is a showing that:

(1) counsel for the defendant has a conflict of interest in continued representation of the defendant;

(2) other counsel has been retained or assigned to defend the case, substitution of new counsel would not cause any delay in the proceedings, and the defendant consents to or requests substitution of the new counsel;

(3) the attorney-client relationship has deteriorated to a point such that counsel cannot render effective assistance to the defendant;

(4) the defendant insists upon self representation and the defendant understands that the withdrawal of counsel will not be permitted to delay the proceedings; or

(5) there is a manifest necessity requiring that counsel withdraw from the case.

5

The Sixth Amendment guarantees a criminal defendant's right to have the assistance of counsel for his defense. Lewis v. State, 730 N.E.2d 686, 688 (Ind. 2000). The right to counsel of choice is not absolute. Lewis, 730 N.E.2d at 689. "It is well settled that the right to counsel of choice must be exercised at the appropriate stage of the proceeding." Id. (citations and internal quotation marks omitted). Continuances sought shortly before trial to hire a new attorney are disfavored because they cause substantial loss of time for jurors, lawyers, and the court. Id. The Indiana Supreme Court has stated that a "trial court, in the exercise of its discretion, may refuse to allow an accused to replace counsel during or immediately before trial because such a substitution would require the court to grant a continuance." Id. at 690. "The denial of a continuance is reviewed for an abuse of discretion, and the denial of the right to counsel of choice . . . is reviewed to determine whether the trial court acted unreasonably and arbitrarily." Id. (citations omitted).

Evaluated under either standard, VanPatten is not entitled to a new trial. In their motion, VanPatten's counsel alleged that "[t]here has been a breakdown in the attorney-client relationship which precludes further representation." Appellant's Appendix at 78. In their memorandum in support of the motion, defense counsel stated in part that "they must be able to make strategic decisions that they feel are in their client's best interest without the specter of a pending investigation into their ethics" and that "[t]his ability has been extinguished by the pending disciplinary complaint filed against them." Id. at 83. The trial court considered VanPatten's complaints regarding his defense counsel and their performance. At the hearing on the motion to withdraw, the court noted that it reviewed

6

the motion and the complaint filed with the disciplinary commission, that "the complaint is wholly without merit," that defense counsel were exceptional and "have exercised every bit of that expertise in this case," that "[t]here's not even a shadow of a question of lack of effective representation," and that the complaint "creates no conflict, meritorious conflict of substance." January 10, 2011 Transcript at 9-10. Under the circumstances and based upon the record, we find that no actual conflict existed and the trial court's inquiry into VanPatten's complaint of the potential conflict was adequate.

Moreover, VanPatten's case had been on the trial court's docket for almost fourteen months at the time of the motion to withdraw. The State filed its charges against VanPatten on November 17, 2009, and VanPatten's counsel Anthony S. Churchward filed an appearance on behalf of VanPatten on December 10, 2009. In a letter file-stamped as received by the court on December 28, 2010, VanPatten asked the court to set a hearing because he wished to fire his attorneys, and VanPatten's defense counsel filed a motion to withdraw appearance on January 10, 2011, which was two weeks prior to the scheduled date of the first day of VanPatten's four-day jury trial of January 24, 2011. The Indiana Supreme Court has stated that a "trial court may refuse a motion for permission to withdraw if the court determines that there will be a resultant delay in the administration of justice." See Bronaugh, 942 N.E.2d at 830 (citing Moore v. State, 557 N.E.2d 665, 668 (Ind. 1990) (recognizing the "late date" of a motion to withdraw filed three weeks before trial)). VanPatten had sufficient time to decide whether he was satisfied with his defense counsel's representation prior to December 2010.

In addition, VanPatten has failed to demonstrate that he was prejudiced by his continued representation of his counsel. A defendant must demonstrate that he was prejudiced before we may reverse because the trial court denied counsel's motion to withdraw. See id. (citing Corder v. State, 467 N.E.2d 409, 413 (Ind. 1984) (stating that "[a]s defendant has not shown that the denial of the motion to withdraw jeopardized or prejudiced him, we cannot now reverse")). We also note that VanPatten did not state that he retained substitute counsel and expressed no specific plans to do so.

Accordingly, we cannot say that the trial court abused its discretion or acted unreasonably and arbitrarily in denying the motion to withdraw appearance filed by VanPatten's counsel and declining to permit VanPatten to discharge his counsel. See Bronaugh, 942 N.E.2d at 829-830 (holding that the trial court did not abuse its discretion in denying the motion to withdraw filed by defendant's counsel); Schmid v. State, 804 N.E.2d 174, 178 (Ind. Ct. App. 2004) (finding that the defendant failed to exercise her right to counsel of choice at the appropriate stage of the proceeding and noting that it is generally neither appropriate nor advisable to hire new counsel for a case that has been pending for seventeen months with a jury trial set in just over thirty days), trans. denied.

## II.

The next issue is whether the court abused its discretion in admitting certain evidence. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs

"where the decision is clearly against the logic and effect of the facts and circumstances." Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001).

"Hearsay" is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is not admissible except as provided by law or the rules of evidence. Ind. Evidence Rule 802.

Ind. Evidence Rule 803 sets forth exceptions to the general hearsay rule even though the declarant is available as a witness. One of the exceptions is related to statements for purposes of medical diagnosis or treatment, found at Ind. Evidence Rule 803(4), and consists of: "Statements made by persons who are seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The Indiana Supreme Court has stated that "[t]his exception is based upon the belief that a declarant's self-interest in seeking medical treatment renders it unlikely the declarant will mislead the person he wants to treat him" and that "[s]tatements made to non-physicians may fall within Evid. R. 803(4) if the statement is made to promote diagnosis or treatment." McClain v. State, 675 N.E.2d 329, 331 (Ind. 1996).

In McClain, the trial court permitted a therapist to testify, pursuant to the medical diagnosis or treatment exception, about statements made to her by a child molestation victim with regard to the details of the molestation. Id. at 331-332. The Court, which

ultimately determined that the therapist's testimony was erroneously admitted but harmless, stated in part:

> The underlying rationale for this hearsay exception requires a two-step analysis for evaluating whether a statement is properly admitted pursuant to Evid. R. 803(4): 1) is the declarant motivated to provide truthful information in order to promote diagnosis and treatment; and 2) is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment.

> In order to satisfy the requirement of the declarant's motivation, the declarant must subjectively believe that he was making the statement for the purpose of receiving medical diagnosis or treatment. Often, for example where a patient consults with a physician, the declarant's desire to seek and receive treatment may be inferred from the circumstances. Where that inference is not obvious, as in this case involving a young child brought to treatment by someone else, there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information. Here the requisite indicia of reliability are missing. There is no evidence that the victim sought the therapist's help or that he believed he was receiving any treatment. The child testified that [the therapist] was his "counselor" and that he talked to her about what McClain did to him. Thus, the record is devoid of any evidence showing that the victim understood that he was speaking to a trained professional for the purposes of obtaining diagnosis of, or providing treatment for, emotional or psychological injuries. Because the declarant's motive to promote treatment or diagnosis is crucial to reliability, the therapist's testimony was not shown to be within the medical diagnosis or treatment hearsay exception.

Id. (citations omitted).

In Cooper v. State, we applied the two-step analysis set forth in McClain and concluded that a nurse's testimony was properly admitted into evidence. 714 N.E.2d 689, 690-692 (Ind. Ct. App. 1999), trans. denied. In examining whether the declarant, the child victim, was motivated to provide truthful information in order to promote diagnosis or treatment, the court reviewed the testimony of the nurse, who described the procedure generally followed when a child comes into the hospital alleging that she is a victim of a

sexual assault, the specific procedure she followed with the child victim in the case, and what the child told her about the molestation. Id. at 692. The court noted that the nurse's testimony indicated that the child sufficiently understood the professional role of the nurse and the doctor who examined her, thus triggering the motivation to provide truthful information, and that the trial court did not err in admitting, pursuant to the medical diagnosis or treatment exception to the hearsay rule, the nurse's testimony regarding what the child had told her regarding the defendant's molesting her. See id. at 694.

Here, Moss testified that the building in which the examination of S.D. took place "looks much like a medical clinic," that "[w]hen the patient enters they first enter into a lobby area, much like anybody would at a doctors [sic] office," and that there were "four patient examination rooms with all of the equipment that we need in order to take vital signs, height, weight as well as examination tables in those rooms." Trial Transcript at 322. Moss testified that she was "wearing scrubs with [her] name and forensic nurse examiner embroidered on the left." Id. Moss testified regarding the standard procedure for children, including that she would usually introduce herself as a nurse and state that "[i]t's my job to make sure that you're okay," obtain a full medical history, complete "routine vital signs," perform "a head to toe examination and a genital examination," and then "finish with discharge teaching." Id. at 323. Moss further indicated that when she asked about a patient's general health issues she also talked to the patients about why they were at the treatment center. The testimony provided by Moss provided a proper basis for the trial court's admission into evidence of the hearsay statements.

Based upon the record, we cannot say that the court abused its discretion in admitting, pursuant to the medical diagnosis or treatment exception to the hearsay rule, the testimony of Moss regarding S.D.'s statements regarding the molestations. See Cooper, 714 N.E.2d at 691-692.

### III.

The next issue is whether the evidence was sufficient to sustain VanPatten's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id. VanPatten argues that there was insufficient evidence to identify him as the person who committed the alleged acts of molestation against S.D.

To the extent that VanPatten argues that the evidence was insufficient to show he was the person who committed the offenses against S.D., we note that elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. Bustamante v. State, 557 N.E.2d 1313, 1317 (Ind. 1990). Inconsistencies in identification testimony impact only the weight of that testimony, because it is the jury's task to weigh the evidence and determine the credibility of the witnesses. Gleaves v. State, 859 N.E.2d 766, 770 (Ind. Ct. App. 2007) (citing Badelle v. State, 754 N.E.2d 510 (Ind. Ct. App. 2001), trans. denied). As with

other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. Id. Rather, we examine the evidence and the reasonable inferences therefrom that support the verdict. Id.

In addition to Moss's testimony regarding S.D.'s statements concerning the molestations, the evidence before the jury revealed that S.D. lived with VanPatten and next door to E.R. at the time of the offenses, that E.R. and S.D. spent the night together at S.D.'s house on a number of occasions during the summer of 2009, that in the middle of the night VanPatten went to the bed where E.R. and S.D. were sleeping and molested E.R. E.R. testified that VanPatten molested her while S.D. was sleeping in bed next to her and that it would wake up S.D. When asked "[w]hat happened when [S.D.] woke up," E.R. testified that "[h]e would do it to her." See Trial Transcript at 212. In addition, E.R. and S.D. spoke with S.D.'s mother on the same morning and were interviewed and examined that day. Following S.D.'s release from the treatment center and after speaking with S.D.'s mother, several police officers went to S.D.'s house to make sure that VanPatten was not present. Although the testimony of Moss, which described S.D.'s statements regarding the actions of the perpetrator, did not specifically identify VanPatten as the person who performed the offenses, it was reasonable for the jury to infer based upon the evidence presented that VanPatten was the person who performed the acts of molestation against S.D. for which he was convicted.

Based upon the evidence, we conclude that sufficient evidence exists from which the jury could find VanPatten guilty beyond a reasonable doubt of molesting S.D. See

13

Carter v. State, 754 N.E.2d 877, 880 (Ind. 2001) (addressing the child victim's expression of some uncertainty about her molester's identity and noting that although the child victim failed to recognize the defendant in the courtroom, she named her father as her attacker in her statements, and the defendant was undisputedly the only father figure in her life), reh'g denied, cert. denied, 537 U.S. 831, 123 S. Ct. 135 (2002); Wilder v. State, 716 N.E.2d 403, 405 (Ind. 1999) (noting that it is the duty of the fact-finder to assess the credibility of witness testimony).

For the foregoing reasons, we affirm VanPatten's convictions.

Affirmed.

KIRSCH, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GERALD P. VANPATTEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1103-CR-113 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BAKER, Judge, concurring in part and dissenting in part.**

I respectfully part ways with a portion of the majority's analysis and conclusion. Specifically, I cannot agree that S.D.'s statements to Moss fit within the hearsay exception for "[s]tatements made by persons who are seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment," provided by Rule 803(4).

As recognized by the majority, our Supreme Court has counseled that in a case involving a young child, "brought to treatment by someone else, there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information," which, in turn, provides the requisite indicia of reliability.

15

McClain v. State, 675 N.E.2d 329, 331 (Ind. 1996) (internal citations omitted). Here, Moss admitted to having no recollection of what exactly she told S.D. prior to the interview and examination. Additionally, there is no other indication that six-year-old S.D. understood Moss's role and the need for her to provide truthful information.

The majority relies on Cooper v. State, 714 N.E.2d 689 (Ind. Ct. App. 1999). However, there are some important distinguishing factors between Cooper and the instant case. While Moss did not have any recollection of what she told S.D., the Cooper Court emphasized the following colloquy between the registered nurse and the young victim:

Q. So you asked [S.A.] what happened?

A. Um-hum. I asked her if she knew why she was there in the emergency room, and I believe she thought she was going to get an exam. She needed to get examined, but she didn't know why.

Q. Did you tell her why?

A. Um-hum; no I asked her why. What she told mom that brought her into the emergency room.

Q. Did she tell you what happened to her?

A. Yes.

Id. at 694. As indicated, the victim was not asked leading questions as to whether she had been abused. By contrast, S.D. was questioned by a forensic nurse at a sexual assault treatment center who could not remember exactly what she asked S.D. This encounter followed her forensic interview at the Child Advocacy Center.

Finally, the majority's reliance on the appearance of Moss wearing scrubs and the building resembling any medical clinic is insufficient to show that S.D. understood Moss's role such that she was motivated to tell the truth for purposes of medical

16

diagnosis and treatment. Indeed, the reliability and admissibility of a six-year-old's statement under Rule 803(4) using the majority's criteria eliminates any consideration of whether the child was subjected to leading and suggestive questions and negates the need to determine what the child believed as opposed to what adults may have believed she should say. In short, under the majority's analysis, the exception provided by Rule 803(4) consumes the general rule prohibiting hearsay statements.

Once Moss's statements are inadmissible, there is insufficient evidence supporting Counts II and IV, which alleged that VanPatten molested S.D. The only evidence supporting these two convictions was S.D.'s testimony and the medical history she gave to Moss. S.D. recanted her earlier statements that VanPatten had improperly touched her. And inasmuch as I have disagreed with the majority's analysis pertaining to the admissibility of S.D.'s statements to Moss, there is simply no evidence to support the offenses alleged in Counts II and IV. Consequently, I would reverse VanPatten's convictions on Counts II and IV.